

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

|  |  |  |
|---|---|---|
| MARK PEREZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-1030 |
| | ) | |
| VANCE UNIFORM PROTECTION SERVICES, INCORPORATED, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This matter comes before the Court on Defendant's Motion for Summary Judgment.  Plaintiff filed suit against his former employer under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., alleging disparate treatment and retaliation motivated by race discrimination.

Plaintiff was hired by Defendant as an unarmed security guard in November, 2001.  After receiving a security clearance, Plaintiff was placed as an armed security officer at the National Reconnaissance Office (NRO) site located in Chantilly, Virginia. After approximately one year on the job, Plaintiff was promoted to a lieutenant position.  On April 14, 2005, Plaintiff, a Caucasian male, engaged in a verbal altercation with security officer Jeffery Jones, an African-American male, in the main lobby of the NRO site.  The altercation threatened to become

physical and the two men were separated by Joseph Reed, the Assistant Project Manager at the NRO site. Shortly after the altercation, Project Manager Fielding Williams began investigating the incident, which required interviews and written statements from Plaintiff, Jones, and Reed.

The next day, before Defendant completed its investigation, a NRO manager contacted Williams and Vance's Director of Operations, Eric Triplett, to direct the immediate removal of the officers involved in the previous day's altercation from the NRO site. Defendant removed Plaintiff and Jones from the NRO site but chose not to terminate either officer. Instead, Defendant chose to reassign Plaintiff and Jones to the two other positions Defendant had available at the time. One position, on Defendant's Aerospace Greens III contract, required a "top secret" security clearance and paid approximately $18.00 per hour. The second position was an unarmed and unclassified position at Sallie Mae that paid approximately $11.00 per hour. Triplett determined that Jones' security clearance would satisfy the "top secret" requirement but that Plaintiff's would not. Accordingly, Defendant assigned Jones to the higher-paying Aerospace Greens position and assigned Plaintiff the Sallie Mae position.

Shortly thereafter, Triplett told Plaintiff that a new contract with Raytheon Technical Services was about to start and

that Plaintiff could interview for the site supervisor position at a higher hourly wage than he was earning at the Sallie Mae site. Plaintiff interviewed, but on May 4, Raytheon selected Mike Gomez, a Caucasian male, for the site supervisor position.

Thereafter, Plaintiff periodically contacted Triplett regarding other available openings that would pay higher than the Sallie Mae position. After being frustrated that there were no such openings, Plaintiff resigned his employment with Defendant on July 8. Plaintiff then filed suit.

Summary judgment is appropriate where there is no genuine issue as to any material fact. See Fed. R. Civ. P. 56(c). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). A material fact in dispute appears when its existence or non-existence could lead a jury to different outcomes. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue exists when there is sufficient evidence on which a reasonable jury could return a verdict in favor of the non-moving party. See id. Mere speculation by the non-moving party "cannot create a genuine issue of material fact." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985); see also Ash v. United Parcel Serv., Inc., 800 F.2d 409, 411-12 (4th Cir. 1986). Summary judgment is appropriate

when, after discovery, a party has failed to make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When a motion for summary judgment is made, the evidence presented must always be taken in the light most favorable to the non-moving party. See Smith v. Virginia Commonwealth Univ., 84 F.3d 672, 675 (4th Cir. 1996) (en banc).

Plaintiff's Complaint alleges that he was subjected to disparate treatment and retaliation in violation of his rights under Title VII. In the absence of direct evidence of discrimination, summary judgment motions under Title VII are analyzed under the McDonnell Douglas burden-shifting framework whereby the plaintiff must make a prima facie showing of discrimination, after which the defendants may rebut that prima facie showing by demonstrating that its behavior was legitimate and non-discriminatory. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-805 (1973) If the defendants have made a rebuttal showing, the plaintiff may survive summary judgment by demonstrating that the defendants' arguments are pretext for discrimination. Id.

A plaintiff establishes a prima facie case of disparate treatment when he shows that (1) he belongs to a protected class, (2) he suffered adverse employment action, (3) he was performing

4

his job duties at a level that met the employer's legitimate expectations at the time of the adverse action, and (4) a similarly situated person outside his protected class received more favorable treatment. Baqir v. Principal, 434 F.3d 733, 741 (4th Cir. 2006). Plaintiff cannot establish a prima facie case of disparate treatment because he cannot establish that he suffered an adverse employment action or that he was performing his job duties at a level that met his employer's legitimate expectations.

Plaintiff identifies four events as the basis for his disparate treatment claim: his removal from the NRO site, Jones' selection for the Aerospace Greens III site rather than his own, his non-selection for the Raytheon position, and the termination of his employment with Defendant. Plaintiff's removal from the NRO site cannot constitute an adverse employment action committed by Defendant because the client directed that Plaintiff be removed from the job site. As the client has the power to direct the removal of particular security officers from its job site, Plaintiff's removal cannot be said to have been caused by Defendant. For the same reason, Plaintiff's non-selection for the Raytheon position does not constitute an adverse employment action. Raytheon interviewed multiple of Defendant's security officers for the position and ultimately chose someone other than Plaintiff. Consequently, this action cannot be attributed to

Defendant and therefore cannot serve as the basis for a discrimination claim against Defendant.

With regard to Jones' selection to the Aerospace Greens III position, Plaintiff claims that he was more qualified for the position because he had been a lieutenant at the NRO site while Jones was not. However, the record shows that this position required a special security clearance that Jones had, but Plaintiff did not, thus making Plaintiff unqualified to hold the position. Moreover, there is no evidence that Defendant prevented Plaintiff from obtaining the proper security clearance. Consequently, as Plaintiff was not eligible for placement at the Aerospace Greens III site, Plaintiff cannot establish that Defendant's failure to place him there is an adverse employment action.

Plaintiff contends that his resignation was not voluntary, but instead the result of constructive discharge. "Constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job." Munday v. Waste Mgmt. of North America, Inc., 126 F.3d 239, 244 (4th Cir. 1997)(internal quotation marks omitted). Here, there is no evidence that Defendant engaged in any behavior that was deliberately designed to cause Plaintiff's resignation. Indeed, Defendant attempted to place Plaintiff in the Raytheon position, but the client chose to hire another of

Defendant's employees. In order to show that his working conditions were intolerable, Plaintiff must show that a reasonable person in his position would have felt compelled to resign. Id. Here, there is no evidence that Plaintiff's working conditions were intolerable to the point where a reasonable person would have resigned. After Defendant placed Plaintiff at the Sallie Mae position, Defendant offered to place Plaintiff on other job sites. Plaintiff chose to reject this offer because those jobs did not pay higher than his Sallie Mae position. Moreover, after Plaintiff ceased working for Defendant, he became a permanent Sallie Mae employee, thus suggesting that he was not dissatisfied with the working conditions at Sallie Mae. Consequently, Plaintiff cannot show constructive discharge.

Even if Plaintiff were able to establish a prima facie case of disparate treatment, Defendant has put forward legitimate, non-discriminatory reasons for its actions. First, the client, not Defendant, directed Plaintiff's removal from the NRO site. It was Defendant's business judgment that acquiescing to the client's wishes on this matter was in the best interest of Defendant's continuing business relationship. Second, Plaintiff was ineligible to work on the Aerospace Greens III project because he did not have the required security clearance. Third, Raytheon chose not to hire Plaintiff and there is no evidence to show that Defendant affected that decision in any way.

Furthermore, Plaintiff presents no evidence that these business justifications are pretext for unlawful discrimination against Plaintiff.

Plaintiff also claims that he was retaliated against for his complaints to management after being reassigned from the NRO site. To establish a prima facie case of retaliation, Plaintiff's evidence must demonstrate that: (1) he engaged in protected activity under Title VII, (2) the employer took adverse employment action against him, and (3) there is a causal connection between the protected activity engaged in by the plaintiff and the subsequent action taken by the defendant. See Munday, 126 F.3d at 242.

Plaintiff cannot establish a prima facie case retaliation because he is unable to show that he engaged in protected activity, that Defendant took an adverse action against him, or that his protected activity caused the adverse action. In order to engage in protected activity, a Plaintiff must oppose an "employer's discriminatory activities." Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 259 (4th Cir. 1994). Plaintiff admits that he made no mention of racial discrimination in any of the complaints he made after being reassigned. Consequently, Plaintiff's actions do not rise to the level of protected activity. In addition, Defendant did not take an adverse employment action against Plaintiff in response to these

complaints because Plaintiff voluntarily resigned his employment and there was no constructive discharge. Moreover, because Plaintiff voluntarily resigned his position, there can be no causal connection between Plaintiff's complaint and Defendant's actions, because Defendant did not terminate Plaintiff's employment or constructively discharge him.

For the reasons stated above, Defendant is entitled to summary judgment.

An appropriate order shall issue.

/s/<br>Claude M. Hilton<br>United States District Judge

Alexandria, Virginia
July 30, 2008